May it please the Court, Gail Ivins, appearing on behalf of Plaintiff Appellant Mr. Moriel-Luna. I want to start with the new information that was raised in this appeal by the government, which is the information about the availability of a visa for Mr. Moriel-Luna and the I-130 that his parents could have filed for him. This Court has, in several cases, when the evidence regarding the government's showing of no availability of relief was not raised in the district court and was not developed in the district court, decided that the case should be remanded for development in the district court. And I just wanted to say that if the court were going to rely on any of that information in evaluating whether the government had met its burden, that really that should be handled in the first instance in the district court. So this actually what you're saying is that we don't really know whether a visa would have been immediately available or not. All we have is arguments right now that were raised for the first time on appeal. Right. We have some evidence from some websites about some information. We're not fact-finders. We can't make those facts. And I'm not saying that it isn't somewhat interesting and persuasive evidence, but I have not developed that because this is not a fact-finding court. And I think that that, if the court reaches that issue, then a remand on that basis would be appropriate. And the second reason, if the court were going to reach that, is that the district court's ruling in this case is very narrow, actually. The district court decided the case on the basis of the very first prong, which is that he had waived the appellate review and that it was a considered and intelligent waiver, and the district court did not reach the issue of prejudice in the sense of those three showings. The district court discussed the issue of availability of relief in the context of determining that the waiver was considered and intelligent. And if you just sort of read that out of context, it almost sounds like the district court is really discussing the prejudice issue, but the district court specifically said that it was deciding the case on the basis of the first prong, that the waiver was considered intelligent. And unlike some cases in front of this court where the prejudice issue was developed and ruled upon by the district court, and then this sort of reached that and reached its own conclusion based on an appropriate appellate review standard, in this case that is not what happened, and the district court did not consider in its ruling that evidence at all, and certainly did not consider the evidence brought up for the first time in this appeal. The other issue that the court might address has to do with the standard under 212C in terms of what Petitioner needs to show to show that there was plausible grounds for relief and whether the outstanding equity standard applies. And I think that although there is some case law floating around, I don't think this Court has ever held that a single assault with a deadly weapon, either this Court or the immigration court, that that would be the type of pattern of serious criminal activity that would require outstanding equities to be shown. In Ayala Chavez, this Court talked about that for serious drug offenses, particularly drug trafficking, and also the need to be shown where the applicant's record reflects a pattern of serious criminal activity. And in 1995, at the time the case was being considered by the IJ, there was just the one conviction, and there was no discussion about the true cause of the prior arrests. And so what were the facts underlying the conviction? The facts underlying the conviction are in dispute. Do you have a trial, or did he plead guilty? He pled guilty, Your Honor. What did he admit to? He admitted to, there's an abstract of judgment. That's what we have in terms of Well, he told the judge he did something. Yes, that he And he was sentenced to prison for five years. We don't know what he told the judge, Your Honor. I don't believe we have a copy of the guilty plea transcript. What we do have is his rendition of what he says happened, and decorations in the record about it being based on a problem that his girlfriend was having, and therefore he shot at the alleged person who was bothering her. And then we have the police reports that document, you know, the Toyota, where it was driving, that shots were fired, that, you know, Mr. Morello I mean, there's some dispute as to whether the girlfriend was present or not. Right. Some things in the record suggest that she wasn't present, or if she was present that she wasn't being presently harassed. That's all correct. But there's no question that he took a couple of pot shots at some people with the gun. The evidence in the record shows that that is what the police report says, but there's never actually, we've never tried a hearing where we discussed with him Well, he pled guilty. What did the indictment say? I don't think we have a copy of that in the record, Your Honor. What we have in the defense. To assault with a deadly weapon. Yes, to assault with a deadly weapon. And got a five-year prison sentence. And he served 30-some months of that. Yes, Your Honor. And what are his equities that would be outstanding to counter-reveal that? Well, the fact that he entered this country at such a young age is a factor that the INS has considered, that basically his entire life was spent in this country, that his parents are legal permanent residents, his siblings, that he was, you know, there's evidence in the record about his involvement at school, how well he did at school, his involvement with his nephew's little league. There's actually some ambiguity, perhaps, in the record about exactly when that happened, but there's at least an allegation that that happened before 1995. And the district judge found that those equities would not, were not so outstanding as to really carry the day, would that be? Well, and interestingly, I mean, and in context, and I've read the district court's order several times, the district court says that it wasn't enough that his, that the district, that the immigration judge was therefore required to advise him of that. And I think that it is conflating the standard from this court, is not that the INS, that the immigration judge would have found, it's are there plausible grounds to believe that they could have found. And this court, in several cases, has made this a fairly moderate standard. And I think the government's, frankly, stronger argument is that they can show, that their burden would be that they have to show that he was not eligible at all for relief because of the visa problem. And I think the reason they stretched that far is because the court's standard on getting to the rest of the way shows that the district courts applied the wrong standard in evaluating this. He basically put the burden of proof to show that he was eligible, and that is not the burden that he bears at this stage of the proceeding. It's to show plausible grounds for relief. And he doesn't need to show outstanding equities. He needs to show essentially that an immigration judge would not have abused his discretion if he had granted this relief. And we do have in the record, in addition to the information listed, a declaration from an immigration law expert, Matt Millen, saying that 50 percent of cases applying for this type of relief are granted. I want to stop you there. I've just got a couple of questions. So our standard would be if we would find that it was not an abuse of discretion if he was granted 212C relief, is that correct? Or is it the flip side, that we would not find it an abuse of discretion if he was denied 212C relief? I don't know that any court, any case in this Court has phrased it that way. We would never get a case in which the INS brought an appeal to us and said stop us from granting him 212C relief. So we couldn't possibly satisfy that burden. Right. So it probably has to be the other. That is, that had someone, had the I.J. denied a full-blown, mature 212C application and it had come to this Court, we would say this is not an abuse of discretion. It's the only context in which we could see that case, isn't it? And I think, I think, I guess my point is that there is sort of a, a circle around the discretion that we don't need to go past. The question is not for the district court judge to evaluate all the facts right now and say what the I.J. would have done. It's really more a question of what the I.J. could have done. And I think that on these facts, the I.J. could have granted relief. You're saying, you're saying that given, given the evidence that there was probably around a, you think around a 50 percent chance that he would have gotten 212C relief. And I think it doesn't even need to be 50 for plausible. Did he have, did he have any other prior record other than the, at that time, other than the assault with a deadly weapon? He had two arrests, but no other prior record. Okay. Everything else came afterwards. And what were the arrests? The arrests were for, I believe, I can get that to you in rebuttal, but for carrying a weapon, I think one was as a juvenile, and another, some type of carrying offense. They were not drug offenses. We have, we have drug offenses since then, but that would not have been considered in terms of the, for the 212 relief. That's correct. That's correct, Your Honor. Do you think, Ms. Enns, do you think that the district court applied the correct standards of law? No, Your Honor. I, I don't think the district court, because he basically placed the burden on the district court, and the district court has always been granted relief in order to determine the, the first factor, which was an intelligent and considered waiver, and I think he maybe conflated the standards. I, I find this, I found his order very confusing because I'm quite familiar with the law in this area, and I just couldn't follow what he was doing. It seemed like he was actually weighing the equities himself to decide whether relief was available. I'm sure everyone in this courtroom is more familiar with immigration law than I am because I really am a criminal defense attorney. But now that I've read these things, I do think that he applied the wrong standard in evaluating that first prong, and he's never even reached, actually, the third prong. But now, and maybe the government can clarify this for me, too. I, I read somewhere that the government agrees that the IJ failed to advise the petitioner of his potential grounds for relief during the hearing. And so the only issue that we're supposed to be considering is prejudice? Is that right? You know, I, I'm over my time. Maybe I should let the government address that because I, I don't remember their brief that way. Okay. I don't, I, okay. I'm not saying where I got that came from this brief. Okay. So we'll, I'll ask him. Okay. And I'll, I have no time to reserve, but thank you. Thank you, Ms. Ives. We'll give you a moment or so of rebuttal. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Counsel, I'm a little bit confused about the standards that the district court judge applied here. I mean, he cited the right cases, but somehow mis, misapplied the standards. But I guess what I'm trying to figure out is did, did, did you concede, or do you concede that at the deportation hearing the IJ failed to advise the petitioner about his potential grounds for relief? We did not concede that in the district court. We concede that now. Okay. And the reason is there was a case that came out actually between our briefing in the district court and hearing in the district court called N. Ray Azuran, which really chopped me off at the knees in the district court with respect to my argument that the, what the, what the petitioner, I'm sorry, what the petitioner had done, adjustment, by using 212C and 212H to waive a ground of inadmissibility to get to adjustment of status, to get to 212C and 212H. If that wasn't clear that that could be done back in 1995. Azuran made it clear. Okay. What, what's the name of the case? Azuran, A-Z-U-R-I-N. And it actually came out between our briefing in the district court and the hearing. Just my luck. Okay. So that, so that prong, so what we have left is prejudice. And. And the district court, I think, Your Honor, reached the issue of prejudice. Well. On page 292 and 293 of the excerpts of record, you'll see the district court says, assuming that to be the case, the court finds that the IJ's error was not prejudicial. And first thing he says is there was nothing in the record to suggest he was eligible for adjustment of status. And second he says, and looks at 212C and then 212H, and rejects the defendant's showing of 212C and 212H, the basis for a 212C and a 212H waiver. And he applies. Right. But that's, that's where I think he was, he, what, what, the standard for prejudice is whether there is a plausible basis for relief, not whether there is an actual, see, and basis for relief. And what Judge Selma is saying is that he's, seems to be analyzing it as though there was an actual eligibility for adjustment in status as opposed to a plausible. Well, I disagree. I think if you look at the first. He uses the words, but then he goes and he weighs the equities as though he were deciding the question. But that's not what he's supposed to be doing at this point. Well, I submit, Your Honor, that what he is supposed to do is look at what the defendant could have submitted back in 1995 on 212C and 212H. And in fact, I think Judge Selma made a mistake here in his 212C analysis, which is he did not apply the outstanding equities standard. He should have. This assault with a deadly weapon case should have triggered the outstanding equities standard. I think that Judge Selma was misled by the defendant's argument below that it had to be a pattern of criminal conduct. In fact, that's incorrect. The BIA's decisional law, and also the standards from the circuit, is that a single serious criminal offense, and I don't think there is really much dispute that this was a single serious criminal offense. It involved the discharge of several shots on a crowded street corner in Santa Ana at an occupied vehicle. That kind of single serious criminal offense should have triggered the outstanding equities standard. And if you apply the outstanding equities standard to the defendant's 212C claim, he doesn't have enough to overcome the 212C argument. All he has is a garden variety submission. I have family here. I've been here a long time. That's not enough to overcome the outstanding equities standard. As far as 212H, again, Judge Selma looked at it and looked at the plausible grounds. And again, what the defendant had in 1995 in terms of a 212H showing for which the standard is extreme hardship, all he had was a garden variety showing. I have family here. My family needs me. He needs to show much more than that. The cases in which this court has approved a 212H showing as being a plausible grounds for relief, cases like Arrieta, there's been much more than just a single conclusory paragraph, which is all that was in the record here from his parents. We rely on our son. We depend on him greatly. That's not enough. That's not what the showing was in Arrieta. But if there – but now you're arguing – you're going back to the argument of whether the I.J. should have advised him. No, I'm not. No, you are in a way. Let me just – just hear me out, okay? Because we know the I.J. should have advised him. And then had he applied for it, there would have been – had he actually applied for it – and I assume your position is that he could have applied for this form of relief now. I think you have to take – you have to say that because of the Zarian. So if he had applied for it, then the – it would be a different I.J. It wouldn't be the I.J. or, you know, another proceeding. And in that proceeding, then he would have had the opportunity to develop the record, and it would have come out that his parents were lawful permanent residents, that he was a lawful permanent resident, that he had been there since he was two. I mean, there's other things beyond what should have triggered the I.J.'s advisement that would have developed in a record. And I would submit to you, Judge Wardloff, that even those facts – the fact that he'd been here for 19, 18, 17 years, how many ever years it was, the fact that his parents were residents, the fact that his parents relied on him, those would not have been enough to overcome either the outstanding equity standard under 212C or the extreme hardship standard under 212A. Are you sure at the time – wasn't it a lot different at the time that the use of a firearm – first of all, it wasn't considered – I'm not clear, but I'm asking – 1995. It wasn't treated the same way we treat it today. It's true that 212C relief was available to him then, and it wouldn't be available to him now. I think that's correct. And he could have adjusted, right? In combination, under 245. Again, that's what Aziran makes clear, is that the route of adjustment of status was potentially available. And I do want to spend a couple minutes talking about the immigration visa, immigrant visa issue. Because although it wasn't raised below, again, because we had this argument we thought was going to work, and Aziran, again, chopped us off at the knees, but in order to get adjustment of status, in order to be eligible, statutorily eligible for adjustment of status, the defendant has to show that an immigrant visa was immediately available. And this is something that is either – But you didn't develop that below, did you? I certainly concede that, Your Honor. We did not develop that below. So isn't that waived? Excuse me? Isn't that – I mean, you can't introduce evidence on that question in front of us. Well, Your Honor, this Court can affirm on any basis that is supported by the record that the district court here did find that there was no prejudice. There would be no prejudice here if the defendant cannot show that an immigrant visa was immediately available. We didn't have the opportunity to show that below. Well. And was it necessarily – I don't know. See, now you're getting into would he have been granted, not whether there was a plausible ground for him being granted relief. But you don't even get the plausible ground for relief, Your Honor, under 212C or 212H unless the defendant can show he could have gotten adjustment of status. And he can't get adjustment of status unless he's statutorily eligible. And he's not statutorily eligible unless he can show an immigrant visa was immediately available. And the fact is, even today, someone who applies today – It's probably harder today. Well, we can look today and see what the date in the Department of State bulletin is, and it's 1992. In 1995, it was 1991. I mean, this is something this Court can look at and determine. It either is available or it isn't. I'm not sure. And it wasn't in 1995. It isn't now. Did you make a motion for judicial notice or anything? I mean, I don't think that's properly before us. And if you want us to consider something like that, aren't you supposed to make a motion for judicial notice? We didn't, so if we were – So I guess you waived it. I don't think we have, Your Honor, because the defendant – You have to do it properly. You have to do it procedurally in a procedurally correct way. I wonder if I understand your argument. You're saying that he had to show that he had a visa readily available? In order to even get to the 212C and 212H. He had to show that. You're saying he had to show it. Yes. And you're saying the record shows that he didn't show it. I'm saying the record shows that he can't show it. Well, now that, if you say he can't show it, you're implicating Judge Wardlaw's concern. You're saying he had the chance and didn't. That's a different story. Well, he never had that kind of hearing, Your Honor, and we concede that. I mean, the immigration judge essentially told him you don't have that kind of relief available. And years later, the law has developed such that it should have been – it now appears now that he could have had that relief available. But the government's point is we then reached the issue of prejudice. And for three different reasons, and I've talked about 212C and 212H. That's one reason. I've talked about ineligibility in my brief. I don't want to spend any time there. But the immigrant visa is a reason why there's no prejudice here. The defendant does not have an immigrant – would not have had in 1995 an immigrant visa immediately available to him. Thus, he could not – Is it his burden to show that a visa was available? It's his burden to show that he was prejudiced. I understand your argument is he can't make that showing. But, again, that's Judge Silverman's point about what Judge Wardlaw said. Correct. I understand – I just want to jump in line here. I get some credit for all of this. It is his burden to show that he was prejudiced by the IJ's failure to advise him of relief. The district court found that he had not met that burden. On appeal, we're arguing, in addition to the reasons that the district court identified, there's another reason, which is that an immigrant visa was not immediately available at the time of his deportation. That's a fact, right? That's an evidentiary fact. I submit to you that it is a fact. And I suppose to pick up on your point, it is a fact that this Court can judicially notice. But you didn't ask us to do that. And so didn't you waive that? Your Honor, we certainly raised it in our brief, and that was a – You raised it for the first time on appeal, and it's an evidentiary fact. I mean, it's something that, if you are correct, that it's relevant to our prejudice determination. It's something that should have – there should have been some findings below on. Well, then, I suppose if that is the Court's concern, then it should remand for there to be findings on that issue. And I submit that it will be a very brief evidentiary. Well, whatever. I mean, it could be brief, or it could be long. But, I mean, I think the judge, one, didn't apply the correct standard, and two, this is a new fact that probably is relevant and maybe does require remand. Well, Your Honor, I see I've gone well over my time, unless you have any further questions, I submit. Thank you. All right. Ms. Irons, you've really used up your time. We'll give you one minute if you could keep to that, please. Thank you. I have two points. One is at page 293 of the excerpt of record, the first full paragraph, the second sentence. This is where I think the district court went wrong. If the extensive record of current family ties, hardships, and other relevant factors presented to this Court were before the IJ, the result might have been different. But he goes on to basically analyze his take on what should be the result. And I think that that sentence was sufficient for him to find plausible gals relief. And, yeah. I would like to go to the question of the visa. On page 16 of your brief, you have argued an immigrant visa would have been immediately available to him because first preference visa numbers were current as of 1995. Now, does that put into dispute what the government then raised in its brief? They're referring us to the website, that that is not true, that those numbers were not available in 1995. My understanding is that we were informed at the time we wrote the opening brief that what we said was true. I do not know enough about immigration law to answer that question without us having a faculty. You cited for the proposition two BIA decisions, one of which is 1992. I don't know how that could tell us that in 1995 there was an immigrant visa available to Mr. Morial. It can only tell us that they were available at that time. Yeah. But I'm wondering whether you have now put this into question by raising this in your opening brief. That's a very good point. And certainly that one of the there's two things. One is that it is the government to answer Judge Silverman's question. It is the government's burden once we've shown the plausible grounds for relief. It's the government's burden to demonstrate that the procedural violation could not have changed the outcome. And that's really where we are. And that's what this Court said in Gonzales-Valerio. Isn't it your burden to show that he would have been eligible for relief and isn't one piece of that that you had to show that a visa was immediately available? That's the piece. This case makes habeas law look easy. That's the piece that is the 245 piece of the two-part prong. And that issue was not developed in the District Court. I certainly can see this was not where the hearing went. Is it your burden to have put all of that, to have proven that? Or if it wasn't shown in the District Court, who had the burden of coming forward with the 245 evidence? You or the government? We had the burden of showing the 245 and 212C or 212H plausible relief. And we alleged that because his parents were legal permanent residents, they could have applied for an I-130 visa on his behalf. We did not discuss in the District Court at any time, based on either an inquiry by the Immigration Judge or the District Court Judge or an issue raised by the government, whether a visa was immediately available. And your point is that the government didn't come forward and say anything in the District Court at that point either. Right. And we didn't say anything at that point either. And that's why I started my argument by saying I can see that the court might get to this point, which is where we are now. And if we're at this point, I think the appropriate remedy is a remand for us to now delve into this and factually develop it because there is some conflicting information about that. And it was the government's burden to make that showing with regard to basically rebutting our plausible ground for relief, they have to either show we're statutorial and eligible, that the defect didn't matter. And this argument is that the defect didn't matter, and that needs to be developed in the District Court. What's the second name for Gonzales? What case? United States v. Gonzales, Valerio. And that's 342, Fed Third, 1051. And it's in the discussion on the challenge to the deportation order, Headnote 4, where it talks about what the government's burden is after we've made a plausible showing. That's Ninth Circuit. What year? 2003. Unless the Court has any further questions. Thank you, Ms. Ivins. Thank you, Mr. McCormick, as well. The case to target is submitted. The next case, 0650215, United States v. Romero, Diaz, is submitted at this time. The next case to be argued is 0556043, Miller v. Thane International. Each side will have 20 minutes. 20 minutes.  Ready? Ready? Ready.
judges: Silverman, Wardlaw, Bybee